1  **JOHN C. ELLIS, JR.**
California State Bar No. 228083
2  **REUBEN CAMPER CAHN**
California State Bar No. 255158
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
4  San Diego, California 92101-5030
Telephone: (619) 234-8467/Facsimile: (619) 687-2666
5  john_ellis@fd.org/ reuben_cahn@fd.org

6  Attorneys for Ms. Kissane

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| UNITED STATES OF AMERICA, | CASE NO.:   15-CR-1928-LAB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| NICOLE KISSANE, | |
| Defendant. | |

**I.    Introduction**

On or about October, 31, 2014, the FBI covertly installed a spy camera in the foyer of Ms. Kissane's apartment.  The surveillance lasted until at least March 7, 2015.  Despite Ms. Kissane's reasonable expectation of privacy in this area, the government installed the spy camera without a warrant (relying instead on the consent of the apartment manager).  To make matters worse, the government failed to disclose that a spy camera was covertly installed in Ms. Kissane's apartment.  In fact, defense counsel did not learn the spy camera was covertly installed until late September 2016, after interviewing the apartment manager. Thereafter, defense counsel requested that the report of investigation detailing the installation of the spy camera be provided or identified in discovery.  Remarkably, the FBI failed to document the installation of the spy camera in any reports, and the government

1 | failed to voluntarily disclose it to defense counsel.  The installation and use of a spy

2 | camera inside an apartment without a warrant violates Ms. Kissane's Fourth

3 | Amendment rights, and all evidence seized or derived from the unlawful

4 | surveillance should be suppressed.

5 | **II.    Ms. Kissane's Fourth Amendment Rights Were Violated**

6 | The Fourth Amendment protects people in their "persons, houses, papers,

7 | and effects," from "unreasonable" searches and seizures. U.S. Const. amend. IV. A

8 | "search" occurs "when the government violates a subjective expectation of privacy

9 | that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33

10 | (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J.,

11 | concurring)). A "search" also occurs when the government "physically occupie[s]

12 | private property for the purpose of obtaining information." *United States v. Jones*,

13 | 132 S. Ct. 945, 949 (2012). Warrantless searches inside the home are

14 | "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). That

15 | extends to warrantless searches of a home's curtilage, which is considered part of

16 | the house. *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012) (citing

17 | *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

**A. Ms. Kissane Had a Reasonable Expectation of Privacy in the Foyer of Her Apartment**

18
19

20 | In *United States v. Fluker*, 543 F.3d 709, 716 (9th Cir. 1976), the Ninth

21 | Circuit addressed the question presented here: does a person have a reasonable

22 | expectation of privacy in "the corridor area separating the door of his apartment

23 | from the outer doorway of the apartment building."  The answer is yes. *See id.*

24 | Here, as was the case in *Fluker*, Ms. Kissane lived in a small apartment complex

25 | and the front door to the complex is always locked.  Under these circumstances,

26 | Ms. Kissane had a reasonable expectation of privacy in the foyer area of her

27 | apartment complex.

28

1

**B. The Use of a Spy Camera Constitutes an Unlawful Search**

2      Secretly video-recording an individual in her home is one of the most

3 invasive forms of electronic surveillance possible. With video surveillance, officers

4 can capture the details of a person's life, whether big or small, in high definition.

5 They can enhance their senses by cataloging details that could be easily forgotten.

6 They can silently rewind and rewatch over and over again without being detected.

7 These concerns are amplified when it comes to video surveillance of a person's

8 home and its curtilage.

9      The Ninth Circuit has made clear "the legitimacy of a citizen's expectation

10 of privacy in a particular place may be affected by the nature of the intrusion that

11 occurs."

12 *United States v. Nerber*, 222 F.3d 597, 601 (9th Cir. 2000). This comes from *Katz*

13 itself, which found a person had a reasonable expectation of privacy in a phone call

14 placed from a public phone booth. Because the "Fourth Amendment protects

15 people, not places[,]" what a person "seeks to preserve as private, even in an area

16 accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351.

17 Even though the booth was accessible to the public and could be observed from the

18 street, the intrusiveness of eavesdropping on an otherwise private conversation

19 meant the Fourth Amendment applied.  *Id.*

20      Since *Katz*, the Supreme Court has repeatedly looked at the intrusiveness of

21 the government's action when assessing whether an expectation of privacy is

22 reasonable. *See generally Nerber*, 222 F.3d at 600-03 (citing *United States v. Place*,

23 462 U.S. 696, 707 (1983) and *Bond v. United States*, 529 U.S. 334, 337 (2000)).

24 Supreme Court decisions approving warrantless surveillance by airplane confirms

25 this.  In *California v. Ciraolo*, 476 U.S. 207, 209 (1986), officers flew a plane 1000

26 feet above the defendant's home, observing and taking pictures of marijuana being

27 grown in the backyard.  The Supreme Court ruled that anyone flying over the area

28 could have seen what the officers observed, and therefore the officers' actions did

1    not violate the Fourth Amendment. *See id.* at 213-14. However, the Court

2    recognized that aerial observation "of curtilage may become invasive, either due to

3    physical intrusiveness or through modern technology which discloses to the senses

4    those intimate associations, objects or activities otherwise imperceptible to police

5    or fellow citizens." *Id.* at 215.

6         Similarly, in *Dow Chemical Co. v. United States*, 476 U.S. 227 (1986), while

7    the Court ultimately approved the warrantless surveillance of an industrial complex

8    because the photographs did not capture "intimate details," the Court cautioned that

9    "surveillance of private property by using highly sophisticated surveillance

10   equipment not generally available to the public, such as satellite technology, might

11   be constitutionally proscribed absent a warrant." *Id.* at 238; *see also Florida v.*

12   *Riley*, 488 U.S. 445, 452 (1989) (plurality opinion) (upholding warrantless visual

13   surveillance of greenhouse by helicopter since "no intimate details connected with

14   the use of the home or curtilage were observed").

15        Prolonged and pervasive video monitoring of the foyer of a small apartment

16   complex exponentially increases the intrusiveness of the government's action

17   because it records intimate details connected with the use of the home and curtilage,

18   including "associations, objects or activities otherwise imperceptible to police or

19   fellow citizens." *Ciraolo*, 476 U.S. at 215, n.3. It permits the government to know

20   who visits and associates with the resident, when that person comes and goes from

21   their apartment, and the routes they take. The invasiveness is further amplified

22   when video surveillance is continuous. "Prolonged surveillance reveals types of

23   information not revealed by short-term surveillance, such as what a person does

24   repeatedly, what he does not do, and what he does ensemble." *United States v.*

25   *Maynard*, 615 F.3d 544, 562 (D.C. Cir. 2010), aff'd sub nom. *United States v.*

26   *Jones*, 132 S. Ct. 945 (2012).

27        Courts have consistently expressed concerns about the government's

28   unsupervised use of covert video surveillance. The Ninth Circuit has specifically

MEMORANDUM OF POINTS AND AUTHORITIES

1   noted that there is "a stronger claim to a reasonable expectation of privacy from

2   video surveillance than against a manual search." *United States v. Gonzalez*, 328

3   F.3d 543, 548 (9th Cir. 2003). Because of its intrusiveness, the Ninth Circuit has

4   permitted defendants to raise Fourth Amendment challenges to video surveillance

5   that may be foreclosed to other, less invasive surveillance techniques. For example,

6   in *United States v. Taketa*, 923 F.2d 665, 668-69 (9th Cir. 1991), agents broke into

7   a DEA agent's office to physically search and install a secret video camera to

8   investigate criminal activity.  The surveillance captured the activities of both the

9   occupant of the office and a co-worker.  *See id.* at 677. The Ninth Circuit held that

10   although the co-worker did not have standing to challenge the physical search of

11   the office, he did have standing to challenge the video surveillance since he had a

12   reasonable expectation of privacy against being videotaped in the office. *See id.* at

13   676-77. The court noted that "[p]ersons may create temporary zones of privacy

14   within which they may not reasonably be videotaped, however, even when that zone

15   is a place they do not own or normally control, and in which they might not be able

16   reasonably to challenge a search at some other time or by some other means." *Id.*

17   at 677.

18       In *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1097 (C.D. Cal. 2006),

19   police officers sued the city and department for violating the Fourth Amendment

20   when they discovered a covert video camera was installed in the officers' locker

21   room. The defendants argued the officers had a diminished expectation of privacy

22   in the locker room because the room was accessible to visitors and other employees,

23   and the camera only recorded public areas, and not any restrooms or shower stalls.

24   *Id.* at 1099, 1104. But the district court disagreed, ruling the officers had an

25   expectation of privacy even if they knew there were others in the locker room

26   because the video surveillance "distinguishe[d] this search from an average visual

27   search and [wa]s far more intrusive than a search of someone's property." *Id.* at

28   1107 (citing *Taketa*, 923 F.2d at 677); *see also Richards v. County of Los Angeles*,

1   775 F. Supp. 2d 1176, 1184-86 (C.D. Cal. 2011) (surreptitious video recording of

2   a "dispatch" room shared by public employees violated Fourth Amendment).

3   In *Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 928 (D. Nev. 2012), the

4   district court found a Fourth Amendment violation when the government provided

5   a private citizen with video equipment that the citizen installed to allow the police

6   to look into his neighbor's backyard. The court found the surveillance, which lasted

7   for 56 days, intruded upon the neighbor's expectation of privacy in part because of

8   the "intensity of the surveillance[,]" noting that the camera was "long range" and

9   "contained superior video recording capabilities than a video camera purchased

10  from a department store." *Id.* at 932. These cases make clear that the invasiveness

11  of secret video surveillance means the continuous recording of the constitutionally

12  protected area of a person's home without a search warrant violates the Fourth

13  Amendment.

**C. The Use of Spy Camera Constitutes a Warrantless Trespass and Violates the Fourth Amendment.**

14

15  *Katz's* reasonable expectation of privacy test "has been **added to, not**

16  **substituted for**, the common-law trespassory test." *Jones*, 132 S. Ct. at 952

17  (emphasis in original). Because the camera allowed the officers to enter the

18  protected area of Ms. Kissane's home in order to obtain information about her, the

19  surveillance was a trespass under the Fourth Amendment. Under the Supreme

20  Court's renewed focus on trespass, an officer's ability to obtain information is

21  restricted "when he steps off [public] thoroughfares and enters the Fourth

22  Amendment's protected areas." *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013).

23  The focus is not on technical trespass but whether there is "actual intrusion into a

24  constitutionally protected area." *Silverman v. United States*, 365 U.S. 505, 512

25  (1961).  Here, the agent's initial trespass of installing the spy camera and continued

26  trespass by use of the camera constitutes a "search" under the Fourth Amendment.

27  *Jardines* is illustrative. Without a search warrant, officers entered the

28  defendant's front porch and permitted a drug-detecting dog to smell the defendant's

1   home. 133 S. Ct. at 1413. In finding the officers had "searched" the curtilage and

2   thus the home under the Fourth Amendment, the Supreme Court noted that when

3   agents intrude onto a "constitutionally protected extension" of a home, the "only

4   question is whether [the homeowner] had given his leave (even implicitly) for them

5   to do so." *Id.* at 1415. It noted the officers had no license, either explicit or implicit.

6   *Id.* at 1415-16. While most homeowners may permit a Girl Scout or trick-or-treater

7   to enter a person's front porch, there was no "customary invitation" to permit a

8   police dog to enter the front of the home and smell for drugs. *Id.* at 1416.

9          The same is true here. Agents entered a constitutionally protected area and

10  covertly installed a spy camera for the purpose of obtaining information.  Thus, the

11  officers "searched" a protected area under the Fourth Amendment.

12               **D. The Government's Failure to Disclose the Use of a Spy Camera**

13         Almost as troubling as the government's convert installation and use of a spy

14  camera are the steps it took to obfuscate it from the defense.  FBI agents authored

15  nearly 650 reports during their investigation of Ms. Kissane.  These reports range

16  from banal phone calls to the intricacies of executing a search warrant.  Yet the

17  government made a conscious decision not to write a report about the covert

18  installation of a spy camera in Ms. Kissane's apartment or otherwise alert the

19  defense.  And to make matters worse, the government did not provide the actual

20  video in discovery; instead they only provided screenshots of the videos.  The

21  significance of only providing screenshots is that, on the many of the other

22  occasions the government only provided screenshots to the defense, it was because

23  the government was copying surveillance video from third parties.  In other words,

24  defense counsel was left with the impression that the surveillance camera was

25  legitimately installed by the apartment management.  In short, the government's

26  actions in this case appear to be intended to mislead Ms. Kissane about the nature

27  of the video footage.  This Court should consider this (along with the other *Brady*

28  violations discussed in Ms. Kissane's companion motion) in determining whether

MEMORANDUM OF POINTS AND AUTHORITIES

1    suppression of the video footage is warranted.

2
        **E. All Evidence from the Warrantless Search of Ms. Kissane's**
3           **Apartment Must be Suppressed.**

4        The government's actions in this case show a wanton disregard of

5    Ms. Kissane's Fourth Amendment rights.   The government has engaged in

6    deceptive practices, withheld evidence, and misled defense counsel.   The court

7    should respond to these actions by, at a minimum, suppressing evidence obtained

8    from the unlawful search of Ms. Kissane's home.

9    **III.    Conclusion**

10       For the above reasons, Ms. Kissane moves this Court to suppress the

11   evidence as set forth above.

12                                           Respectfully submitted,

13

14    Dated:  September 30, 2016          *s/ John C. Ellis, Jr.*

15                                        JOHN C. ELLIS, JR.
                                          Federal Defenders of San Diego,
16                                        Inc. Attorneys for Ms. Kissane
                                          Email:  John_Ellis@fd.org
17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

**CERTIFICATE OF SERVICE**

Counsel for the Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

John Parmley
Assistant U.S. Attorney

Michael F. Kaplan
Assistant U.S. Attorney

Respectfully submitted,

Dated:  September 30, 2016       *s/ John C. Ellis, Jr.*
JOHN C. ELLIS, JR.
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Kissane

Email:  John_Ellis@fd.org